UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NORTHERN NATURAL GAS COMPANY, A DELAWARE CORPORATION;<br><br>Plaintiff,<br><br>vs.<br><br>DONNELLY FARMS LIMITED PARTNERSHIP, A SOUTH DAKOTA LIMITED PARTNERSHIP;<br><br>Defendant. | 4:23-CV-04089-RAL<br><br><br>OPINION AND ORDER GRANTING MOTION TO BIFURCATE AND MOTION TO AMEND SCHEDULING ORDER |

Pending before this Court is Plaintiff Northern Natural Gas Company's ("Northern") Motion to Bifurcate, Doc. 27, and Defendant Donnelly Farms Limited Partnership's ("Donnelly") Motion to Amend/Correct Scheduling Order, Doc. 29. For the following reasons, both motions are granted.

I. **Facts, the Prior Ruling, and Procedural Background**[1]

Northern is a Delaware corporation with a principal place of business in Nebraska that sells and transports natural gas through interstate pipelines. Doc. 1 at 1–2. Donnelly is the record owner of real property in Union County, South Dakota described as "[t]he Southeast Quarter of the

---

[1] The parties previously stipulated to a statement of undisputed material facts in connection with a Joint Motion for Partial Summary Judgment. Doc. 16. This Court denied that Joint Motion as both parties in briefing and at oral argument argued facts beyond the stipulated ones. Doc. 26. This Court draws the facts largely from that statement of undisputed material facts and other matters of record that appear to be uncontested.

1

Southeast Quarter (SE/4 SE/4), Section Thirteen (13), Township Ninety-One (91), Range Fifty (50) ("the Property")." Doc. 16 at 2. On June 5, 1952, Donnelly's predecessors in interest conveyed to Northern a multiple-line-rights easement ("MLR Easement"). Id.; Doc. 1-1. The MLR Easement granted Northern the right to "construct, maintain and operate pipe lines, and appurtenances thereto" on the Property along with "the right of ingress and egress from [the Property], for the purpose of constructing, inspecting, repairing, maintaining and replacing" the pipeline facilities. Doc. 1-1. Northern obtained the MLR Easement to construct, operate, and maintain a segment of its M561 A-Line natural gas transmission pipeline. Doc. 1 at 2.

To mitigate safety risks from aging pipelines, the United States Federal Energy Regulatory Commission ("FERC") in March 2021 authorized Northern to abandon a portion of the M561 A-line and replace certain facilities as part of the Sioux Falls A-Line Replacement Project ("Project"). Id. at 3. As part of that Project, Northern obtained a Pipeline Facility Easement ("Facility Easement") from Donnelly that granted Northern the "right, privilege, and easement to construct, inspect, repair, maintain, operate, replace, and remove below ground and above ground natural gas facilities." Doc. 1-2; Doc. 16-2 at 2. The Facility Easement also granted to Northern the "right of ingress to and egress from the [Property], for the purpose of constructing, inspecting, repairing, maintaining, operating, replacing, and removing" the facilities. Doc. 1-2; Doc. 16-2 at 2.

Pursuant to the Facility Easement, Northern constructed a new, larger regulator facility north of the original facility on the Property. Doc. 16-3. South Dakota Highway 11 runs north and south along the Property's eastern border. Doc. 1 at 4. Separating the new regulator facility and Highway 11 is a road ditch. Doc. 16-3. In October 2021, Northern claims it presented Donnelly with the options of accessing the new regulator facility from Highway 11 from either

2

north or south of the regulator facility. Doc. 1 at 4. Donnelly allegedly preferred access from the north; however, in November 2021, Donnelly advised Northern that it preferred neither option. Id. Instead, Northern alleges Donnelly requested Northern build an access approach directly between the regulator facility and Highway 11. Id. Donnelly contests that it ever gave permission for Northern to build such an access approach off Highway 11 to the new regulator facility.

On January 13, 2022, Northern applied for a highway access permit ("the Permit") from the South Dakota Department of Transportation ("SDDOT") to construct the access approach. Doc. 16 at 2. Northern sought permission to build a 20-foot by 40-foot approach directly adjacent to the regulator facility. Doc. 1 at 4. The SDDOT approved the Permit. Doc. 16 at 2; Doc. 1-3. Donnelly did not sign the Permit application. Doc. 16 at 2. Northern constructed the access approach in February 2022. Id. The access approach is a graveled driveway adjoining the regulator facility to Highway 11, cutting through the road ditch. Doc. 16-3.

On October 31, 2022, Donnelly, through counsel, sent a letter to SDDOT demanding SDDOT cancel the Permit because Donnelly had not signed the Permit application. Doc. 16 at 3; Doc. 1 at 5. On May 4, 2023, the SDDOT entered an Order for Removal of Access Approach requiring Northern to remove the access approach by July 7, 2023. Doc. 16 at 3. Administrative proceedings regarding the Order for Removal of Access Approach are stayed pending the present litigation. Id.

On May 31, 2023, Northern filed its Complaint, raising four claims against Donnelly: breach of contract, preliminary and permanent injunction, forcible exclusion from real property, and promissory estoppel. Doc. 1. On June 26, 2023, Donnelly filed its Answer and Affirmative Defenses. Doc. 8. Neither Northern nor Donnelly demanded a jury trial in their initial pleadings.

3

Docs. 1, 8. This Court entered a Rule 16 Scheduling Order on March 14, 2024, which set April 1, 2024, as the deadline to move to join additional parties and to amend the pleadings. Doc. 14.

On March 29, 2024, Donnelly's counsel emailed Northern's counsel a draft stipulation to amend Donnelly's Answer and a draft of a First Amended Answer and Counterclaims, stating in the email that "[if] we do not hear from you, you agreed this morning that we could have an extension on the deadline to amend now set for April 1st." Docs. 31 at 1, 33-1 at 3. On April 15, Northern's counsel contacted Donnelly's counsel suggesting the parties first file cross-motions for summary judgment on the sole issue of whether the easement agreements authorized Northern to build the access approach and then extend the time for the parties to amend pleadings after. Doc. 31-1 at 8. On April 18, Donnelly's counsel emailed Northern's counsel stating "all deadlines are at a standstill at this time and we will continue the discussion of stipulating to a new scheduling order." Doc. 31-1 at 6. Donnelly did not file a motion for leave to file the First Amended Answer and Counterclaims but joined Northern in a Joint Motion for Partial Summary Judgment. Northern and Donnelly filed the Joint Motion for Partial Summary Judgment along with a Stipulated Statement of Undisputed Material Facts requesting this Court decide the "narrow issue" of whether the easement agreements authorized Northern to build the access approach. Doc. 16.

This Court held a hearing on the joint motion for partial summary judgment on October 17, 2024. Doc. 24. This Court denied summary judgment to either party. In ruling from the bench, this Court expressed an understanding on why the parties had filed a joint motion for summary judgment to avoid attorney's fees exceeding what might be at stake. Doc. 26 at 32. This Court reasoned that "the interests of justice are served by an expeditious ruling that allows the parties then to decide where they go with this case." Id. This opinion and order summarizes the reasoning expressed on the record to frame the issues in this case.

The easements permitted Northern "the right of ingress to and egress . . . for the purpose of constructing, inspecting, repairing, maintaining, replacing, and removing" the pipeline and facilities. Doc. 1-2; Doc. 16-2. After summarizing the easements and facts described above, this Court agreed with the parties that the language of the easement agreements was not ambiguous, leaving the issue of whether the easements permit construction of the access approach off Highway 11. Mindful that South Dakota law governs in this diversity jurisdiction case, this Court predicted that the Supreme Court of South Dakota would look to Restatement (Third) of Property: Servitudes § 4.10. Doc. 26 at 35; see Stanga v. Husman, 694 N.W.2d 716, 718–19 (S.D. 2005) (drawing from Restatement (Third) of Property: Servitudes § 4.8 in determining if partial relocation of access road impacted access assured by easement); DeHaven v. Hall, 753 N.W.2d 429, 437–39 (S.D. 2008) (referencing Restatement (Third) of Property: Servitudes §§ 4.13 and 4.1).[2]

Section 4.10 of the Restatement (Third) of Property: Servitudes states:

> Except as limited by the terms of the servitude determined under § 4.1, the holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude. Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment.

The construction of the access approach did not expressly violate the terms of the easements. Doc. 26 at 35. Northern argued the access approach is necessary to permit Northern to operate, maintain and repair the regulator facility, which is within Northern's easements rights. Donnelly claimed that the approach is not reasonably necessary for the convenient enjoyment of the easement and

---

[2] In DeHaven, the Supreme Court of South Dakota adopted an approach akin to § 4.10 of the Restatement (Third) Property: Servitudes in discussing rights of the servient owner by stating "[i]n the absence of contrary language in the easement, a servient owner may use that portion of its real property subject to an egress, ingress and roadway easement for its own purposes up to the point where such uses substantially interfere with the dominant owner's reasonable use of the easement."

interferes unreasonably with the Donnelly's enjoyment of the property because of a limit on the number of field approaches allowed within a mile stretch of road. Donnelly also contested certain information advanced by Northern beyond what was in the statement of undisputed facts concerning whether the access approach was reasonably necessary and whether the ditch at times was too wet to drive through without the access approach. Doc. 26 at 36. In short, both parties had argued and referenced matters outside of their stipulated facts.

This Court then turned to SDCL § 43-13-5, which states that "[t]he extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired," and to the Supreme Court of South Dakota's application of that statute in Vander Heide v. Boke Ranch, Inc., 736 N.W.2d 824 (S.D. 2007). In Vander Heide, the Court found implicit in that statute, similar to § 4.10, that:

> the holder of a private easement has the right to limited use or enjoyment of the property only if it is consistent with the general use of the property by the owner, and "neither the physical size nor the purpose or use to which an easement may be put can be expanded or enlarged beyond the terms of the grant of the easement."

Id. at 837 (quoting Canyon Lake Park, L.L.C. v. Loftus Dental, P.C., 700 N.W.2d 729, 736 (S.D. 2005) (in turn quoting Selway Homeowners Ass'n v. Cummings, 657 N.W.2d 307, 315 (2003))). In Vander Heide, the court noted that "expansion of an easement beyond the terms of the grant is an undue interference with the reserved rights of the grantor." 736 N.W.2d at 837. This Court noted that Vander Heide was the most analogous South Dakota case but was resolved on a court trial court with issued findings of fact. Doc. 26 at 37. Because of the limited record and additional facts both parties wanted considered, this Court denied both sides summary judgment but invited the parties "to have some efficient presentation of evidence for the Court to then rule on the substantive question of whether this unambiguous language in the 1952 and 2001 grants does permit, under the circumstances, what occurred here" with Northern obtaining a Permit without

Donnelly's express approval.[3]  Id. at 37.  After this Court inquired about the scheduling order, Donnelly's counsel indicated that the parties would "probably stipulate to amend [the scheduling order]."  Id. at 38.

Eleven days after the motion hearing on October 28, 2024, Donnelly's counsel contacted Northern's counsel suggesting the parties begin discussing a stipulation for an amended scheduling order.  Doc. 31-1 at 15.  Northern's counsel responded the next day, informing Donnelly's counsel that he could provide an update after a call with his client.  Id. at 14.  Donnelly's counsel followed up on November 13, again suggesting the parties discuss an amended scheduling order.  Id.  On December 2, 2024, Northern proposed a partial settlement offer.[4]  Id. at 19.  Donnelly's counsel confirmed receipt of the offer but acknowledged that if the parties were unable to agree to settlement, then they should discuss an amended scheduling order.  Id. at 18.  On December 16, Donnelly's counsel shared her client's concerns regarding the settlement offer with Northern's counsel and again suggested the parties discuss an amended scheduling order, indicating Donnelly intended to file an amended answer and counterclaims.  Id. at 16–17.

On December 27, 2024, Northern filed its Motion to Bifurcate, seeking to bifurcate the "narrow issue" of whether the easement agreements authorized Northern to build the access approach from all remaining claims and requested a court trial on the issue, arguing bifurcation will expedite and economize the action.  Doc. 28.  On January 13, 2025, Donnelly's counsel contacted Northern's counsel, requesting Northern withdraw its motion to bifurcate and agree to an amended scheduling order.  Doc. 31-1 at 22.  Northern declined to withdraw the motion to

---

[3] Northern maintains that Donnelly had assented orally to such an access approach but Donnelly contests that.
[4] Any settlement discussions are inadmissible under Fed. R. Evid. 408.  The record properly does not reveal what settlement discussions occurred, and the mention of them here is simply to explain the parties' discussions about amending the scheduling order and the delay in doing so.

7

bifurcate. Id. at 21. Donnelly's counsel then suggested Northern dismiss its motion to bifurcate and refile it after the Court issued an amended scheduling order. Id. at 20. Northern declined, stating it would agree to amending the scheduling order if this Court ruled that Northern was not authorized to build the access approach. Id. at 20. On January 17, 2025, Donnelly filed a Motion to Amend/Correct Scheduling Order, opposing bifurcation and seeking to amend the scheduling order. Doc. 30. This Court held a hearing on the pending motions to bifurcate and amend the scheduling order on May 19, 2025.

## II.   Discussion

### A. Motion to Bifurcate

Rule 42(b) of the Federal Rules of Civil Procedure allows district courts to try claims or issues separately "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "Bifurcation of a trial is only appropriate, however, when it serves one of [these stated] purposes . . . ." Hautala v. Progressive Direct Ins. Co., No. CIV. 08–5003, 2010 WL 1812555, *12 (D.S.D. May 3, 2010). District courts have broad discretion to bifurcate under Rule 42(b), but they should consider the "preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." O'Dell v. Hercules, Inc., 904 F.2d 1194, 1201–02 (8th Cir. 1990). As the moving party, Northern bears the burden to justify a need for separate trials. See Athey v. Farmers Ins. Exch., 234 F.3d 357, 362 (8th Cir. 2000) (holding that district court did not abuse its discretion by declining to bifurcate claims because the movant did not show prejudice).

Northern argues that bifurcation will "expedite and economize" the case. Doc. 28 at 6. Specifically, Northern argues that if this Court were to rule in favor of Northern on the issue, it would render Northern's promissory estoppel claim moot, allow this Court to adjudicate

Northern's request for injunctive relief, facilitate settlement on its forcible exclusion claim, and render potential counterclaims nonviable. Id. Additionally, Northern argues that "substantial discovery and expert expense" related to an anticipated condemnation action (if Northern were to lose) could be avoided if this Court were to first rule in Northern's favor. Id. at 7. At the hearing, Northern expected that it would call just two witnesses as part of a one-day bifurcated court trial—Northern rights-of-ways employee Nathan Hanneman and former Northern engineer Matt Kraft. After the hearing, Northern's counsel corrected himself to clarify that the two witnesses would be Bryan Krueger and Matt Kraft in the proposed bifurcated trial.

Donnelly opposes bifurcation, arguing bifurcation will not expedite or economize the case and would be substantially prejudicial. Doc. 30 at 2. Donnelly first argues that Northern's motion to bifurcate should be denied on grounds of estoppel based on the exchanges leading Donnelly to believe that Northern would agree to an amended scheduling order. Id. Donnelly also argues that all claims will rely on the same evidence and witnesses, and the potential of two separate trials would be a waste of judicial resources and increase legal expenses. Id. Donnelly finally argues that it will be prejudiced by the lack of an opportunity to conduct discovery, noting that it has done no discovery. Id. At the hearing, Donnelly's counsel elaborated that Donnelly wants to move to consolidate this case with a separate, recently-filed condemnation case in this Court involving the same parties but a separate tract of land where Northern laid its pipeline without having an easement. Donnelly's counsel elaborated that Donnelly lacks the ability to counterclaim for punitive damages in that new condemnation case but wants to use the counterclaim in this case as a vehicle for seeking punitive damages for behavior related to the condemnation action. Donnelly has not moved to consolidate cases.

Bifurcation may be appropriate when resolution of one issue would be dispositive of the entire case. See Peter G. by and through Susan T. v. Derry Twp. Sch. Dist., No. 1:23-CV-0043, 2024 WL 1217223, *2 (M.D. Pa. 2024); Liberty Mut. Ins. Co. v. Hawaiya Techs., Inc., No. 18-00410, 2021 WL 54503, at *3 (D. Haw. Jan. 6, 2021) (denying motion to bifurcate where resolution of a single claim or issue was not dispositive of the entire case."). However, when issues are so intertwined such that "counsel, parties, witnesses, experts, the Court, and jurors might face redundant trials with potentially repetitious testimony," bifurcation is inappropriate. Campanella v. N. Props. Grp., LLC, No. 19-cv-171, 2019 WL 8402451, at *4 (D. Minn. Dec. 19, 2019). This case presents the former situation where one issue may be dispositive of the case.

A court trial on the sole question of whether the easements authorized the access approach will focus on whether the access approach was "reasonably necessary for the convenient enjoyment of the servitude" or "cause[s] unreasonable damage to the servient estate or interfere[s] unreasonably with its enjoyment." Restatement (Third) of Property: Servitudes § 4.10. If Northern prevails, the parties are saved expenses associated with appraisals, counterclaims, and damage quantification as well as discovery and trial on those matters. If Donnelly prevails, the ruling, as Northern recognized, becomes res judicata and saves time in any subsequent trial on damages amount or removal of the access approach. Rule 1 of the Federal Rules of Civil Procedure states the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Applying Rule 42(b) to bifurcate for a court trial on the threshold issue helps to secure a more "just, speedy and inexpensive" determination of this case. The whole reason that the parties filed a joint motion for summary judgment was to seek a quick decision on whether the access approach exceeds Northern's rights under the easements without the expense of discovery. The bifurcation and court

trial provides a means to accomplish that. Moreover, part of the Complaint contains equitable claims and requests for injunctive relief that are for the Court.

### B. Motion to Amend

Donnelly seeks to amend the current scheduling order. Doc. 29. Donnelly's counsel made several unsuccessful attempts to get Northern to agree to an amended scheduling order, and now all deadlines set in this Court's original Rule 16 Scheduling Order have passed. Doc. 14. Donnelly intends to file an amended answer and counterclaims, but the deadline for amending the pleadings passed on April 1, 2024. All discovery was to be completed by June 28, 2024, but to date, no depositions have occurred, Donnelly has not made any discovery requests of Northern, and only limited written discovery has been exchanged. Doc. 31 at 3. Northern does not oppose Donnelly's motion but wanted a decision first on Northern's motion to bifurcate. Doc. 34 at 3.

Northern has identified just two trial witnesses on the bifurcated issue: Bryan Krueger and Matt Kraft. This Court will re-open discovery for 60 days to allow Donnelly time to depose those two witnesses related to the issue bifurcated for court trial. Donnelly has 30 days to disclose any expert witness under Fed. R. Civ. P. 26, and Donnelly shall make that person available for deposition within 30 days of the expert witness disclosure. This Court does not perceive that expert testimony is needed on the bifurcated issue but leaves that to counsel to decide.[5]

### C. Conclusion

For the foregoing reasons, it is

---

[5] Donnelly's counsel when asked at the hearing what witnesses she would have besides representatives of Donnelly to testify about whether the easements permitted the access approach referenced hiring an expert to conduct an appraisal and damages analysis. If this Court during the bifurcated trial rules in favor of Donnelly, such expert testimony would be in order. This Court will enter an amended scheduling order to reopen pleading and discovery deadlines if it rules for Donnelly at the court trial.

ORDERED that Northern's Motion to Bifurcate, Doc. 27, is granted to bifurcate the equitable claims and the issue of whether the easements authorized the access approach focusing on whether the access approach was "reasonably necessary for the convenient enjoyment of the servitude" or "cause[s] unreasonable damage to the servient estate or interfere[s] unreasonably with its enjoyment." It is further

ORDERED that Donnelly's Motion to Amend, Doc. 29, is granted to the extent that discovery is reopened for a period of 60 days on the limited topic of that bifurcated issue and for Donnelly to depose Bryan Krueger and Matt Kraft on the subject matter identified for the bifurcate trial, if Donnelly chooses to do so.

DATED this 22nd day of May, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE